v. Soneet Kapila Thank you. Mr. Tavis. Good morning, Judge. Joel Tavis of Tavis & Soloff. On behalf of Soneet Kapila, the Chapter 7 trustee, the final decree which was appealed from is merely a ministerial matter where the court acknowledges that everything in the bankruptcy proceedings have been complied with and the court is closing the case. It's akin to a proceeding in district court where after the judgment's entered, the court enters an order closing the case. What you think is available to an interested litigant in an appeal from that sort of an order is an argument that, for example, you shouldn't have closed a bankruptcy case because there were still some assets that were not administered. There were still some payments that hadn't been made. There were still some things going on that hadn't been finalized. That could be properly appealed from that sort of a case-closing order. That's absolutely correct, Judge. Under Rule 3022, which governs final decrees, all that is done is the trustee is discharged because he's complied with all of his obligations and the case is closed. That's all. It's not a prerequisite to other final orders in the proceeding being final. So help me out. I'm still trying to figure out what orders it is that they think are tainted. Do you have a sense in your own mind for what orders it is that they're targeting? Are there orders that exist outside the adversary proceeding that they think are tainted and that they want to appeal? And if so, are those orders final, such that they had to be appealed earlier? I don't really know. The answer is I'm not sure what they believe they're doing. We did cite the Mondelli case, Your Honor, which was the only case we could find where any litigant had brought up an issue that the final decree was a necessary element to the finality of prior orders. And while I was preparing for oral argument, I went back and surveyed every case I could find in this district. Since the bankruptcy code was enacted almost 41 years ago, and the case law is legion with regards to the finality of a variety of orders. So you don't, I guess, deny the possibility that along the way, let's say, there might be an order in the bankruptcy proceeding outside the adversary proceeding that I don't know my catalog of bankruptcy orders, but, you know, that isn't final, but that nonetheless they say is tainted. If there is a tainted non-final outside the adversary proceeding order, would that be appealable at the end? No, Your Honor. When would you appeal that one? Those, under the standards, under the bankruptcy code and this court's rulings, and I did research some additional case law, which I would like to cite today, and I provided to counsel earlier. And we have copies for the court, but there's one particular case, In re Martin, which is at 796 F. Second, 1435, where this court found the finality of bankruptcy court orders cannot be limited to the last order concluding the bankruptcy case as a whole. This circuit and others reviewing bankruptcy decisions have freely applied the collateral order doctrine and the Forgay-Conrad rule to such results. In that case, and in a few of the other cases I pulled, for instance, the court, the Eleventh Circuit, has ruled and held that state relief orders, for instance, are final and appealable orders. So, for instance, with regards to Mr. Broeker and the appellant's complaints as to what happened in the adversary, the adversary was validity, extent, priority, and lien. We were not involved. The trustee was not involved in this. It was between Mr. Broeker's client and a secured creditor. In that particular matter, there was an adversary. There were two appeals to this court, one on the Mertz, one on Rule 60B. I apologize. The second one did not make it up here. That was just the district court. And then there was a state relief order which allowed that particular secured creditor to go back to the state court and litigate more issues with regards to the validity and efficacy of the lien. That went up to the third DCA, and Mr. Broeker's client lost that. So they've gone up three times on appeal. These are not our issues because the interesting thing, too, about finality is Mr. Broeker's client, the appellant's hearing, confirmed a plan of reorganization. The confirmation order is res judicata, collateral estoppel, and the conversion of this case to a Chapter 7 occurred after the confirmed plan. What a confirmed plan does under Chapter 11 is it revests all property of the Chapter 11 bankruptcy estate in the reorganized debtor, which was Mr. Broeker's client. Mr. Broeker's client used available funds from the Chapter 11 case to continue post-confirmation with litigation efforts against FACE, who has identified Mr. Gassenheimer's client, and others. They used up those monies. They had a great plan. It was a very favorable plan that Milland and Russen obtained for them. And it would have enabled them to continue making mortgage payments and doing a whole host of things while they continued to either market, liquidate, or sell the property. The problem they have, and this is also a fine order, when this case was converted post-confirmation to a Chapter 7, this is clear, there's no dispute anywhere about this, there was no property of the Chapter 7 estate because all of the property had revested... revested in the reorganized debtor by virtue of the confirmation order. So Judge Iskoff, before recusal, had found that there was no property of the estate. So the reason I bring that up is because Judge Gale below said there's no pecuniary interest that the debtor has in this particular estate. And without going through all the layers of claimants who would have to get paid before, there was any pecuniary interest. No one had a pecuniary interest in the Chapter 7, which is the current proceeding, because the Chapter 7 estate never had any property, nor could it have any property. So we've been litigating some of these issues for six, seven years now, and, you know, I know... What was, in light of what you just explained, what was the adverse or adverse-like judgment against Mr. Broker's clients after the conversion to Chapter 7? The court had... It was the... Before recusal. Yes, Judge. It was the adversary proceeding you were referring to, if I may. The first, it was the adversary which determined the validity, extent, and priority of Mr. Gassenheimer's lien. That was appealed to the district court and affirmed, and was appealed to this court and affirmed, and this court issued a written ruling affirming the case. And then about eight months after this court affirms that judgment in the adversary proceeding, that's when, on FACE's motion, Judge Isikoff converted the case to a Chapter 7 and appointed Mr. Kapila as the trustee. Yes, I believe that's accurate. So, from that point on, what happens that is adverse, from your perspective, to Mr. Broker's clients? The judgment's already been issued. Yes, Judge. Obviously, there's a Rule 60B motion filed at some point, and that gets denied. Is there any other litigation besides that when that Rule 60B motion gets denied? No, they took that up to district court, and as Mr. Broker said, there was a stipulated dismissal with prejudice, and that was the Rule 60B appeal. My understanding from Mr. Broker's papers is they subsequently discovered another ground that they believed was a basis for recusal, and as pointed out by Judge Gale, they argued in the district court that they never brought that motion because they thought they were going to lose. Do they still bring the motion? I mean, is there anything preventing them from bringing a Rule 60B now? No, and Judge Gale said that, we said that, and we said that's the right procedure. If you think you've got sufficient grounds to bring another Rule 60B motion, you need to bring it before the bankruptcy court. They just skipped it, and I don't think there's a court in the country who's held that a final decree's necessary to make all the other orders in a case final. In fact, this court's held stay-relief orders are final. It's held confirmation orders are final. Adversary judgments are final, and part of the reason I brought up the effect of confirmation with respect to property of the estate is there's no way to put Humpty Dumpty back together again here. There is no property over which the Chapter 7 trustee has jurisdiction, none. It's all been litigated. There's been stay-relief granted. It was litigated again in state court, and there's just nothing that can be done in this estate, and the odd part of this particular appeal is most of what Mr. Broeker and the appellants have complained of are matters with regards to the adversary proceeding and the specific creditor in Mr. Gatzenheimer. I'm not Mr. Gatzenheimer. I'm not Berger-Singerman. I wasn't the lien claimant. I represent the Chapter 7 bankruptcy trustee. Let me ask you just a quick question, and I'm sorry if this is, like, remedial appellate bankruptcy practice. It probably is, but just so I understand, I'm trying to think about, like, the quintessential non-final order, maybe, let's say, like, an order denying or compelling discovery, right? Yes. So if there is an order denying or compelling discovery outside the adversary proceeding that they say is tainted by bias, the reason the bankruptcy judge denied us discovery is because she plays tennis with plaintiff's counsel and hates us or whatever, then when is that appealable? That's not appealable immediately, is it? No. That would be appealable at the end? No, the final decree is not relevant to that end. So when would that be appealable? When does the clock, like, begin to tick on that order? Your Honor, it would depend whether or not it was done in conjunction with a contested matter. So in the main case, without an adversary proceeding, a motion can be brought up. It can be in contested matter. When that... Say someone had objected to the claim of face and it was an objection to claim, not an adversary proceeding. When the order was entered, allowing or disallowing the claim, that would be relevant and that would be appealable, the discovery issue. I see. So you wouldn't wait until the telltale end. You'd wait until the end of the contested claim piece of the proceeding. That's correct, Your Honor. Got it. Okay, very helpful. That has to be final. Yes, absolutely. You wait until, like, the next final order that pertains to the interlocutory order that you're concerned about. Yes, which is exactly why I brought up the state relief orders, because those are in the main case and they basically divest the bankruptcy court of jurisdiction, so there's nothing left for the bankruptcy court to do with that particular matter. I did want to also point out one thing, which I think was not clear from Appellant Counsel's presentation. Judge Isikoff, my understanding is Judge Isikoff's recusal was not because a recusal motion was uploaded. She recused herself because Mr. Scuderi, who's one of the appellants herein, hand-delivered that particular letter and left it in the mailbox at her residence. That was why she recused herself, not because of the merit of anything in the letter or anything else. She felt that she could not be impartial after he found out where she lived and left the letter at her home. Your Honor, if there's no other questions, I finished with my own. Thank you very much. Yes, Judge. All right. Thank you. Let me start where we left off. As demonstrated in our later motions in the district court, it was clear in a matter of public record where this judge lived because that was the registered address of the foundation where she had all of the galas every year where donors, including the senior partner of the firm that represented FASE, were there. And so we feel that that was a pretext to say, well, here's a way to make the date for my recusal as of a recent date and not go back to the undisclosed facts at the beginning. For purposes of our jurisdictional discussion, I accept all of that. But you litigated that or you had the opportunity to litigate that before Judge Mark. You think he improperly curtailed the proceeding, didn't give you discovery, shut it down, told you to sit down. You appeal that to the district court. And then at some point thereafter, there's a dismissal because there's a settlement. Why isn't that? If you're alleging error in the denial of the motion to recuse under Rule 60B, that dismissal ends it all. Right. Why isn't that fatal to your being here now? Okay. Let me say a couple of things and then get to the question. First, we're not litigating a denial of recusal. We're litigating the... What are you challenging? We're challenging the failure to disclose at the inception of the case, the relationships with counsel. I'm sorry to interrupt, but that was part of your Rule 60B motion. Some of it was. Some of it was not. The foundation issue was not learned of until later. So why isn't the answer that you can file a Rule 60B motion with anything you've learned after that? That's one of the things I'm hearing now. And I accept that. So let me put that aside and just say we're here now. Based upon everything that has gone on in this case and other cases, and I point the court to the recent decisions in Trafford, In re Trafford Liberty Properties versus Capilla, and in re Trafford Richard Clark versus Capilla, decisions issued by Judge Altanaga on August 9th and Judge Marino on September 9th. And in Judge Marino's opinion, he goes back to the congressional record and concerns about the bankruptcy practice being a club as perceived by people who are not regular practitioners in the bankruptcy court. And the need to get disclosures, either at the beginning of the case, which is what the situation was here, or in the middle of the case when something happens, as is what happened in the Trafford case. So how do we get here? We get here because the issues could not be brought before this court until the case was final, as demonstrated by this court's dismissal of the Talarchic appeal, which was from the Sanders order. It was one of the cases that counsel gave me this morning. Let me make sure. In 2015, when you discovered additional evidence that you thought suggested that there was some recusal issues or the need for recusal, at that point in time, you could have either filed a new 60B motion or could you not have asked for reconsideration of the previous denial of your 60B motion, your initial 60B, based upon the new evidence? Would that not have been a procedural tool you could have used? You've gotten to the heart of our conundrum. But at that point, if your reconsideration motion or your new 60B had been denied, that would have been the ability to get here, right? That would have been your key through the door to get to this court. I don't believe so, because I believe that under the law that this court has established, we can't get to this court until the final dismissal has been entered. So we were under a conundrum. Final dismissal of what? I mean, the final order resolving the case, the one that we appealed from. So the case was closed. The order closing the case. And so we had a conundrum of, do we go back for another 60B motion in front of the judge that told us, just sit down, no discovery, this is offensive, or do we wait for that final order closing the case so that we can get to the Eleventh Circuit on what we have? And so what we've done is we've waited until that final order to get to this court so that we can ask this court to take a look at these issues and give us some relief. Now, I hear that perhaps this court looks at it as we should have brought another 60B motion, and certainly that's what Judge Gail said in the district court. But we wanted to get past the district court and get before this court with these facts, with these issues, and do it at a time when we were confident that this court would have jurisdiction based upon the finality of the proceedings below. All right, Mr. Broker, thank you very much. Ms. Tabor, thank you very much. We appreciate it.